## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ROSE CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| JAMES H. LEGG, Michael Swerdlove | ) | |
| Chief John Robison, City of Alpharetta | ) | |
| Alpharetta Police Department, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Rose Campbell (hereinafter "Plaintiff" or "Ms. Campbell"), by and through undersigned counsel, and files this Complaint for Damages, and shows the Court the following:

## NATURE OF COMPLAINT

1.

Plaintiff hereby asserts the following claims against Defendants in the above-captioned action:  Violation of 42 U.S.C. Sec. 1983 – Excessive force under the Fourth Amendment to the United States Constitution.

## PARTIES

2.

Plaintiff is an individual and a citizen of the State of Georgia.

3.

At all relevant times herein, the Alpharetta Police Department was a vehicle through which the City of Alpharetta governs.

4.

At all relevant times herein, Michael Swerdlove was a law enforcement officer employed by the City of Alpharetta and acting under color of state law.  Michael Swerdlove is sued in his individual and official capacity.

5.

At all relevant times herein, James Legg was a law enforcement officer employed by the City of Alpharetta and acting under color of state law.  James Legg is sued in his individual and official capacity.

6.

The City of Alpharetta may be served through its General Counsel at 2 Park Plaza Alpharetta, Georgia 30009.

7.

James Legg may be served personally at 2565 Old Milton Pkwy, Alpharetta, Georgia 30009.

8.

Michael Swerdlove may be served personally at the Alpharetta Police Department headquarters, located at 2565 Old Milton Pkwy, Alpharetta, Georgia 30009.

9.

Chief John Robison may be served personally at 2565 Old Milton Pkwy, Alpharetta, Georgia 30009.

10.

The Alpharetta Police Department may be served at 2565 Old Milton Pkwy, Alpharetta, Georgia 30009.

## FACTUAL ALLEGATIONS

11.

At all times herein mentioned, James Legg, Michael Swerdlove, and Chief John Robison were the agents and/or employees of the City of Alpharetta and the Alpharetta Police Department, and in doing or failing to do the things hereinafter alleged, were acting in the purpose and scope of such agency and/or employment.

12.

James Legg, Michael Swerdlove and Chief John Robison were trained and supervised by the City of Alpharetta through the City of Alpharetta Police Department.

13.

The City of Alpharetta, through the Alpharetta Police Department, had a duty to train and supervise Defendants James Legg, Michael Swerdlove and Chief John Robison.

14.

The actions and conduct of Defendants James Legg, Michael Swerdlove, and Chief John Robison, as herein alleged, were ratified and approved by the City of Alpharetta.

15.

This Court has proper jurisdiction over the parties to this action and over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §1343 (civil rights jurisdiction); 42 U.S.C. §1983 (deprivation of civil rights); and 42 U.S.C. §1985(3) (conspiracy to interfere with civil rights).

16.

Venue is proper in this district under 28 U.S.C. §1391(b) because (1) the unlawful actions alleged herein were committed within the Northern District of Georgia; (2) the City of Alpharetta is located within this district; (3) James Legg, Michael Swerdlove and John Robison reside in this district; and (4) all of the events and/or facts that give rise to this action occurred in this district.

17.

On the night of May 4, 2018, Plaintiff was a ride-sharing driver for Uber/Lyft, transporting a passenger to her place of employment.

18.

Plaintiff was driving her passenger on Ga. 400 and Windward Parkway when she was pulled over by Officer Michael Swerdlove.  Defendant Swerdlove alleged that Plaintiff failed to maintain her lane.

19.

Officer Swerdlove requested Plaintiff's license and registration, which she provided without incident.  Officer Swerdlove then issued Plaintiff a citation for failure to maintain lane. Plaintiff disagreed with Defendant Swerdlove's resuscitation of the facts and the issuing of any citation.

20.

Immediately upon receiving the citation from Defendant Swerdlove, Plaintiff requested his supervisor.

21.

Plaintiff repeated her request three times to Defendant Swerdlove.

22.

After Plaintiff's fourth request for a supervisor, Defendant Swerdlove demanded that she sign the traffic citation. Plaintiff requested a supervisor for a fifth time.

23.

After Plaintiff's fifth request for a supervisor, Defendant Swerdlove escalated the situation by demanding that the Plaintiff exit the vehicle.

24.

Plaintiff attempted to explain to Defendant Swerdlove why she had an issue with the citation but was unsuccessful.

25.

Defendant Swerdlove then aggressively reached into Plaintiff's car, unlocked the door, and violently ripped it open.

26.

Defendant Swerdlove then asked, "Are you gonna step out of the car ma'am?"

27.

Plaintiff calmly and respectively replied, "Sir, I am going to wait for your supervisor."

28.

Shortly thereafter, Defendant Swerdlove threatened to take the Plaintiff to jail if she refused to sign the citation.

29.

Plaintiff requested to take her passenger to her destination and not sign the citation.  Defendant Swerdlove refused.

30.

Plaintiff then requested a pen and the citation and signed the citation. Defendant Swerdlove then stated, "You are not free to go." Defendant Swerdlove then reached inside Plaintiff's vehicle unlocked the pull and thrust it open.

31.

The door to Plaintiff's car inadvertently struck Defendant Swerdlove and he immediately became agitated and violent.  Defendant Swerdlove began reaching inside the Plaintiff's car, pushing and pulling the Plaintiff and her seat belt.

32.

Fearing for her life, Plaintiff requested a supervisor again while Defendant was pulling her and the seatbelt.  Plaintiff requested a supervisor an additional two more times.

33.

As Defendant Swerdlove continued his assault, he changed his basis for arresting the Plaintiff from failure to sign the ticket to disorderly conduct.

34.

Plaintiff responded to Defendant Swerdlove's assault by requesting a supervisor eight additional times.

35.

Additional police officers and vehicles arrived on the scene and surrounded Plaintiff's vehicle.

36.

Officer John Doe approached on the Plaintiff's driver's side and Defendant Legg approached on the passenger side.

37.

Officer John Doe began pulling Plaintiff out of the driver's side door as Defendant Legg attempted to push Plaintiff out of the driver's side.

38.

Fearing for her life and safety, Plaintiff surrendered, informing Defendant Swerdlove that she would exit the vehicle with Officer John Doe. She also requested that Defendant Swerdlove let her go so that she could surrender to Officer John Doe.

39.

The scene began to de-escalate until Defendant Legg left the passenger side and approached the driver's side of Plaintiff's vehicle.


40.

As Plaintiff began to exit the vehicle, Defendant Legg exclaimed, "You're not in charge, shut the fuck up and get out of the car."

41.

Plaintiff asked Defendant Legg if he was a supervisor.  Defendant Legg ignored Plaintiff's question and violently and without provocation snatched her arm and twisted it behind her back.

42.

Plaintiff screamed in pain and requested a supervisor an additional five times.

43.

Plaintiff was secured in handcuffs by Defendant Swerdlove and Officer John Doe and each had secured one of the Plaintiff's arm.

44.

Again, violently and without provocation, Defendant Legg snatched Plaintiff's arm causing irreparable damage.

45.

Plaintiff was escorted to a police vehicle where she requested a supervisor and warned officers on the scene that their behavior had escalated her blood pressure and she feared that she would have a heart attack in a few moments.

46.

The dash cam footage of the violent assault became public a few days later and was released to the local media.

47.

The Alpharetta Police Department, specifically Public Safety Chief John Robison, condemned Defendant Legg's actions and suspended him for his actions.

48.

Shortly after Defendant Robison's public statement, Officer Howard Miller, a department spokesperson, also condemned Defendant Legg's actions stating that "[Legg] arrived on the scene, engaged in the incident and apparently lost his cool and his temper, and acted inappropriately with his words and his actions."

49.

Defendant Legg resigned following the announcement of his suspension and the forthcoming investigation and released a statement justifying his illegal actions.

50.

In his public statement, Defendant Legg justified his resignation by stating, "[Defendant Robison has] all but issued a statement finding my actions unworthy, unreasonable, and in violation of policy."

51.

As a result of Defendant Swerdlove and Defendant Legg's actions, Plaintiff has suffered and continues to suffer damage to her back, shoulder, neck and knee.

52.

Plaintiff's injuries are permanent, as she has undergone surgery for a separated shoulder, treatment for her back and neck, and is scheduled for surgery for her knee.

53.

Plaintiff continues to receive treatment for the above-mentioned injuries and will continue to need treatment for an indefinite period of time.

54.

Plaintiff worked as a driver for Uber and Lyft and consistently drove passengers four to five days a week on average before the violent assault by Defendant Swerdlove and Defendant Legg.

55.

Since the violent assault took place by the Defendants, Plaintiff has been unable to consistently work and support herself as she still suffers from the physical and emotional trauma of her experience with the Defendants.

56.

At all times relevant, Plaintiff neither posed and/or offered any reasonable threat to Defendant Swerdlove or Defendant Legg.

57.

At all times herein mentioned, Defendants Swerdlove and Legg had a duty to observe, recognize, and uphold Plaintiff's civil rights which were protected by the Constitution of the United States.

58.

At all times herein mentioned, Defendant Swerdlove and Defendant Legg were acting within the course and scope of their employment with the City of Alpharetta as law enforcement/police officers and acting under the color of state law.

59.

At all times herein mentioned, the City of Alpharetta was a state actor.

60.

The City of Alpharetta, through the Alpharetta Police Department, breached its duty to adequately train, supervise, monitor, or control the activities of Defendant

Swerdlove and Defendant Legg on May 4, 2018, and, in so doing, caused harm to Plaintiff which proximately and foreseeably resulted in her injuries.

61.

As heretofore alleged, Defendant Swerdlove and Defendant Legg demonstrated willful misconduct, malice, wantonness, oppression, and/or that entire want of care which would raise the presumption of a conscious indifference to the consequences.

62.

The actions and conduct of Defendant Swerdlove and Defendant Legg, and the City of Alpharetta, constitute a violation of Plaintiff's right to be free from excessive force by a police officer under the Fourth Amendment of the United States Constitution, which guarantees Plaintiff the right to be free from excessive force.

## CLAIMS FOR RELIEF

### COUNT 1
### FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS SWERDLOVE AND LEGG

63.

Plaintiff re-alleges the previous allegations.

64.

The force used against Plaintiff by Defendants Swerdlove and Legg was unreasonable and excessive.

65.

Plaintiff had a right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of excessive and unreasonable force in the course of an arrest, even a lawful arrest.

66.

Plaintiff was placed in imminent fear of her life and suffered severe pain and injury as the result of Defendants Swerdlove and Legg's actions, specifically the violent pushing and pulling of Plaintiff' body.

67.

Plaintiff's right to be free from unreasonable and excessive force was clearly established by state and federal law at the time of the events giving rise to this Complaint.

68.

A reasonable law enforcement officer would have known that Defendants Swerdlove and Legg's conduct would violate Plaintiff's right to be free from unreasonable and excessive force.

69.

Defendants Swerdlove and Legg acted under color of law and under official policy, customs, and/or usage as an employee and agent of the city of Alpharetta and the Alpharetta Police Department.

70.

Defendants Swerdlove and Legg subjected Plaintiff to the deprivation of rights and privileges secured to her by the United States Constitution including the constitutional rights to not be deprived of her liberty, due process of law, and to be free from the use of excessive and illegal force against her person under the Fourth and Fourteenth Amendments to the United States Constitution.

71.

Defendants Swerdlove and Legg acted under color of law with malice, deliberate indifference, and/or recklessness, and with callous and gross disregard to Plaintiff's rights.

72.

Plaintiff claims damages for the injuries caused by Defendants Swerdlove and Legg as allowed under federal and state law.

73.

As a direct and proximate result of the reckless, willful, wanton, malicious and/or unlawful conduct of Defendants Swerdlove and Legg, Plaintiff will continue

to suffer economic and non-economic damages for which these Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

74.

Plaintiff demands compensatory and punitive damages against Defendants Swerdlove and Legg, in their individual and official capacities. Defendants are also liable for attorney's fees, costs, witness fees, and any additional legal or equitable relief that this Court deems appropriate. Plaintiff demands a trial by jury on all issues.

## COUNT 2

### FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF ALPHARETTA

75.

Plaintiff re-alleges the previous allegations.

76.

The City of Alpharetta was responsible for operating the Alpharetta Police Department, for appointing the Alpharetta Chief of Police, and for adopting and implementing rules and regulations for the City of Alpharetta and its police department's employees.

77.

The City of Alpharetta was responsible for implementing the rules, regulations, policies, and procedures regarding training, screening, hiring, supervising, controlling, disciplining, assigning, and terminating police officers.

78.

The City of Alpharetta knew, or through the diligent exercise of their duties and use of reasonable care, should have known, that the policies and procedures of its police department, including its screening, hiring, training, supervision, disciplinary process, processes for work assignments, and termination process for its officers were severely deficient as evidenced by civilian complaints made, including complaints of excessive use of force and biased policing constituting violations of constitutional rights by police officers.

79.

The City of Alpharetta was deliberately indifferent in that they either expressly or impliedly acknowledged and assented to the failure to train, supervise, control, discipline, or otherwise screen its police department employees, including, but not limited to, Defendants Swerdlove and Legg, for dangerous propensities, lack of training or skill, or other characteristics making officers unfit for duty.

80.

The City of Alpharetta was deliberately indifferent to the public's rights in that they failed to determine whether police officers, including Defendants

Swerdlove and Legg posed a threat to the public as a result of his propensity to use illegal and excessive force.

81.

The City of Alpharetta, through its deliberate indifference, failed to ensure that its police officers did not violate citizens' constitutional and statutory rights, including those of Plaintiff, while City of Alpharetta officers were acting under color of state law for the City of Alpharetta.

82.

The City of Alpharetta acted with deliberate indifference and reckless, wanton and/or callous disregard for the rights of persons, including Plaintiff, who might be assaulted, injured, or battered, or by police who had been inadequately trained, supervised, and/or disciplined.

83.

The deliberate indifference of City of Alpharetta violated the constitutional rights of all persons, including Plaintiff.

84.

Plaintiff's injuries were caused by City of Alpharetta's described acts, omissions, policies, customs, and practices.

85.

As a direct and proximate result of Defendants' reckless, willful, wanton, malicious and unlawful conduct, Plaintiff will continue to suffer economic and non-economic damages for which these Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

86.

Plaintiff demands compensatory damages against City of Alpharetta, in its official capacity. Defendant is also liable for attorney's fees, costs, witness fees, and any additional legal or equitable relief that this Court deems appropriate.

## COUNT 3

**FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT JOHN ROBISON IN HIS OFFICIAL AND PERSONAL CAPACITIES FOR DELIBERATE INDIFFERENCE / FAILURE TO TRAIN POLICE OFFICERS ON EXCESSIVE FORCE**

87.

Plaintiff re-alleges the previous allegations.

88.

Defendant Chief Robison was responsible for the day-to-day operation of the Alpharetta Police Department, and for adopting and implementing rules and regulations for its officers.

89.

Defendant Robison was responsible for promulgating the rules, regulations, policies, and procedures regarding hiring, screening, training, supervising, controlling, disciplining, assigning, and terminating police officers.

90.

Defendant Robison was deliberately indifferent to the rights of the public, including Plaintiff, in that he failed to determine whether Alpharetta police officers, including Defendants, posed a threat to the public as a result of the propensity to use illegal and excessive force.

91.

Defendant Robison, through his deliberate indifference, failed to ensure that Alpharetta police officers did not violate the constitutional and statutory rights of its citizens, including those of Plaintiff, while Alpharetta officers were acting under color of state law.

92.

Defendant Robison acted with deliberate indifference and reckless and/or callous disregard for the rights of persons, including Plaintiff, who might be assaulted, injured, or battered by Alpharetta police officers who had been inadequately trained, supervised, or disciplined.

93.

Defendant Robison's deliberate indifference violated the constitutional rights of all persons, including Plaintiff.

94.

Plaintiff's injuries were caused by Defendant Robison's previously described acts, omissions, policies, practices, and customs.

95.

As a direct and proximate result of Defendant Robison's reckless, willful, wanton, malicious and unlawful conduct, Plaintiff will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

96.

Plaintiff demands compensatory and punitive damages against Defendant Robison, in his individual and official capacity.  Defendant Robison is also liable for attorney's fees, costs, witness fees, and any additional legal or equitable relief the Court deems appropriate.

97.

As a direct and proximate result of the conduct and actions of officers Defendants Swerdlove and Legg, Plaintiff suffered the following injuries and damages:

a.   Physical pain and mental anguish in the past and future;

b.  Physical impairment in the past and future;

c.  Lost earnings;

d.  Damages to earning capacity; and

e.  Pain and suffering.

98.

It was necessary for Plaintiff to retain the undersigned attorneys to file this action.  Upon judgment, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

99.

WHEREFORE, Plaintiff prays for trial by jury on all issues and judgment against Defendants, inclusive, and each of them, as follows:

a.   For special damages according to proof at time of trial;

b.   For lost wages according to proof at time of trial;

c.   For general and compensatory damages according to proof at time of trial but not less than one million five hundred thousand and 00/100 ($1,500,000.00) dollars;

d.   For pre-judgment and post judgment interest;

e.   For punitive and exemplary damages as determined by the enlightened conscious of an impartial jury;

f.   For costs of suit incurred herein, including attorneys' fees; and

g.   For all other and further relief that the Court may deem just and

     appropriate.

This 3rd day of May, 2020.

Respectfully submitted,

**THE RICHARDS LAW GROUP**

/s/ Michael Akemon
Michael Akemon
Georgia Bar No. 434260
The Richards Law Group, LLC
P.O. Box 360295
Decatur, GA 30036
Phone: (404) 289-6816
Fax: (404) 795-0727
mutepe.akemon@richardslegal.com
Attorney for Plaintiff